IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MONTGOMERY CARL AKERS, | CV 20-0064-BU-BMM |
| Plaintiff, | |
| vs. | ORDER |
| J. CONOVER, KATHERINE N. SIEREVELD, DOES 1-20, | |
| Defendants. | |

Plaintiff Montgomery Akers originally filed this suit in Montana state court on November 13, 2020, alleging constitutional violations and violations of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq. (Doc. 1-1.) Defendants removed the matter to this Court and have filed a motion to dismiss or, in the alternative, for summary judgment, under Fed. R. Civ. P. 12(b) and 56. (Doc. 20.) Akers filed an Amended Complaint on March 1, 2021, in which he makes additional and unrelated allegations. (Doc. 14-1.) Defendants' motion will be granted.

I.   BACKGROUND

Akers is a federal prisoner incarcerated in Marion, Illinois, proceeding pro se. In his sparse original Complaint, he asserted only that on August 10, 2020, the defendants conspired to and did unconstitutionally block contact between himself

1

and Joel Shields, a resident of Bozeman, Montana, whom he has characterized as a spiritual advisor. (Doc. 1-1 at 8.) In his Amended Complaint, Akers adds several allegations tangentially related to these initial claims. He again asserts Defendants engaged in "a conspiracy" "directed at the religious freedoms of" Akers, again related to Joel Shields, but also as to Alan Davis and Tim Murphy. (Doc. 14-1 at 1.) Akers alleges that these acts were motivated by anti-Christian sentiment, claiming that defendants discriminated against him based on his religion and their allegedly known animus toward Christians and Muslims. (*Id.* at 2 - 3.) Akers also alleges state torts of "discrimination and defamation." (*Id.* at 3.)

    Akers also asserts tortious interference with Akers' prospective financial undertaking with Davis, a resident of Colorado, regarding a purchase of real property from Murphy, a resident of Montana. (*Id.* at 2.) Davis was also purportedly selling Akers' intellectual property and contends that the loss of this deal, due to the actions of Defendants, resulted in the loss of $20 million in Montana.

    II.    ANALYSIS

    Defendants' motion is based on four grounds: this Court lacks both specific and general personal jurisdiction over these defendants; Akers fails to state a cognizable *Bivens* constitutional claim; Akers fails to state a RFRA claim; and

Akers has failed to comply with the Federal Tort Claims Act regarding his state law claims. (Doc. 21.)

    A. Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction on a motion to dismiss a complaint for lack of personal jurisdiction. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits when there is no applicable federal statute governing the issue. *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998). Courts in Montana use a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 18, 378 Mont. 75, 80, 342 P.3d 13, 17.

Personal jurisdiction may exist under Mont. R. Civ. P. 4(b)(1) if a party may be "found within the state of Montana" and subject to general jurisdiction. Mont. Code Ann. § 25-20-II. To be "found" within Montana for general jurisdiction purposes, a person must be either physically present, or "it is necessary that the defendants' activities [in Montana] are 'substantial' or 'systematic and continuous.'" *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 19, 378 Mont. 75, 80–81, 342 P.3d 13, 17 (2015) (internal citations omitted.)

In the alternative, if the claim for relief arises from any of the acts listed in Mont. R. Civ. P. 4(b)(1)(A-G), it may support specific jurisdiction for the purpose of litigating that particular claim. These acts include transaction of business, commission of an act that results in accrual within Montana of a tort action, ownership of property in Montana, contract of insurance in Montana, or acting as an officer in a Montana corporation or a personal representative of a Montana estate.

If personal jurisdiction appears to exist, the Court must determine whether the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause" of the United States Constitution. *Milky Whey, Inc.*, 378 Mont. 75 at 80 (citations omitted.) The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291(1980).) The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted).

The Ninth Circuit Court of Appeals has held that a court may exercise specific personal jurisdiction over a nonresident defendant under the following circumstances:

> (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiffs claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004). The plaintiff bears the burden of establishing the first two prongs of this test. *Id.* Failure to do so means no personal jurisdiction exists in the forum state. If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that jurisdiction would not be reasonable. *Id.*

In *Walden v. Fiore*, the U.S. Supreme Court emphasized a few aspects of this due process analysis. "First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State." Plaintiff's convenience or interest is not sufficient. Second, "minimum contacts analysis" looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Though the plaintiff bears the burden of establishing personal jurisdiction, he needs only to make a prima facie case of jurisdictional facts. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). He cannot "simply rest on the bare

allegations of its complaint," but any uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

The sole factual allegation regarding jurisdiction in Akers' Amended Complaint is a blanket assertion that jurisdiction is proper in Montana because "the acts and actions of the defendants […] took place in the State of Montana." (Doc. 14-1 at 1.) Akers then describes various actions of Defendants that he claims were directed at him (who is himself not found in Montana) and two people who allegedly live in Montana, Shields and Murphy. No factual allegations appear in the Amended Complaint that support the conclusion that these Defendants can be found in Montana, either physically or judicially, for the purposes of this Court exercising personal jurisdiction over them.

Defendants support their brief with a Statement of Undisputed Facts, accompanied by the declarations of Defendants Conover and Siereveld. (Docs. 22, 22-1 and 22-2.) The declarations establish that neither Defendant has ever traveled to Montana, nor has had contact with anyone in Montana related to her work activities. (Docs. 22-1 at 2 and 22-2 at 3.)

Akers' brief in response includes a "Statement under the Penalty of Perjury," which the Court will construe as his attempt to rebut Defendants' declarations.

(Docs. 54 and 55.) Unfortunately, though this document covers extensive territory regarding what Akers considers to be fraudulent behavior, it fails to establish any plausible contacts between Defendants and Montana. The only assertion that remotely involves whether Defendants had the constitutionally required "minimum contacts" is Akers' belief that Siereveld "has had contacts within the State of Montana and the United States Attorney's Office, specifically" her counsel in this matter, Assistant U.S. Attorneys Tanner and Francis, "as far back as February, 2018. (Doc. 55 at 4 – 5.) Giving this assertion some level of credibility, it still fails to establish jurisdiction over Siereveld. A mere assertion of "contacts" proves insufficient to carry Akers' burden. Possible communications, which Akers baldly asserts but Defendants deny, are not, without more, the type of "'substantial' or 'systematic and continuous" contacts that would create personal jurisdiction. *Milky Whey, Inc. v. Dairy Partners, LLC*, 378 Mont. 75, 80–81. Further, any contact with counsel following the filing of this lawsuit cannot create personal jurisdiction where there was none before. *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007.) It is illogical to assert that by communicating with a lawyer to defend oneself against a claim of personal jurisdiction in a foreign forum, one thereby consents to such jurisdiction.  Akers has not carried his burden to establish sufficient minimum contacts between Defendants and the State of Montana to allow general personal jurisdiction.

As to specific jurisdiction, there are no factual allegations to support its application in this matter. Of the acts enumerated in Montana's Rule 4(b)(1), the only one that could conceivably apply, based on the allegations of Aker's Amended Complaint, is "the commission of any act resulting in accrual within Montana of a tort action," assuming Akers could establish that Defendants committed a tort in Montana. Mont. R. Proc. 4(b)(1)(B). The Montana Supreme Court discussed this provision in *Tackett v. Duncan*, 334 P.3d 920 (Mont. 2014) and reviewed what it means for a cause of action to "accrue" in Montana. The Montana Supreme Court emphasized that "specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation,[…] , and depends on whether the defendant's "suit-related conduct" created a substantial connection with the forum state. *Tackett*, 334 P.3d at 925 (internal quotations and citations omitted). The Montana Supreme Court "focused on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Id.*, at 358; *see also Bi–Lo Foods, Inc. v. Alpine Bank, Clifton,* 955 P.2d 154, 157–59 (Mont. 1998) (that the defendant allegedly took actions which were calculated to have an effect in Montana and caused an injury to a Montana resident in Montana does not establish accrual of an action in Montana).

Taking Akers' allegations in his Amended Complaint as true, Defendants cut off his communication from prison with Shields. Defendants deny that they made

this ultimate decision, as it fell to the warden at the prison. For the purposes of analysis, however, The Court will accept the assertion as true. Akers does not say they ever communicated with either of the residents of Montana named in the Amended Complaint, Shields and Murphy. Whatever Defendants did, they did where they live and work, by communicating within their work context with the warden of the prison in Illinois where Akers lives. None of these acts touched Montana and they do not give rise to specific personal jurisdiction.

This Court lacks personal jurisdiction over these Defendants. As such, it will not consider further Defendants' other arguments, and the action will be dismissed.

Based on the foregoing, it is HEREBY ORDERED:

1. This matter is DISMISSED. The Clerk of Court is directed to enter judgment on behalf of the Defendants.

2. All other motions filed in this matter are moot and therefore DENIED.

3. Because Akers fails to provide any evidence supporting his allegations, the District Court should CERTIFY, pursuant to Federal Rule of Appellate Procedure 24(a)(3)(A), that any appeal from its disposition would not be taken in good faith.

DATED this 20th day of October, 2021.

_____
Brian Morris, Chief District Judge
United States District Court